[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1290 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1291 
This is an appeal from the denial of a petition for post-conviction relief filed pursuant to Rule 20, A.R.Cr.P.Temp.
The petitioner, Anthony Keith Johnson, was indicted for the capital offense of the murder of Kenneth Cantrell during the course of a robbery, in violation of § 13A-5-40, Code of Alabama 1975. Johnson was subsequently tried and found guilty as charged in the indictment. At the sentencing hearing, the jury recommended that Johnson be sentenced to life imprisonment without parole. The trial court overrode the jury's recommendation and on November 8, 1985, sentenced Johnson to death.
Johnson's conviction and death sentence were affirmed on direct appeal. Johnson v. State, 521 So.2d 1006
(Ala.Cr.App. 1986), aff'd, 521 So.2d 1018 (Ala.),cert. denied, 488 U.S. 876, 109 S.Ct. 193,102 L.Ed.2d 162 (1988).
The Rule 20 petition that led to this appeal was filed on April 4, 1989, and an answer to the petition was filed on April 19, 1989. An amendment to the petition was filed on November 9, 1989, and an answer to the amended petition was filed on November 19, 1989. The petition, as amended, was summarily denied on March 16, 1990, by Judge A.L. Hundley. In response to a joint motion of the parties, this court remanded the case on April 10, 1990, for further proceedings. On April 30, 1990, Judge Hundley recused himself from any further participation in the proceedings. Evidentiary hearings were conducted before Judge John Jolly on November 15, 1990, and on December 17, 1990. On March 12, 1991, another amendment to the petition was filed. Thereafter, an answer to the petition as amended was filed.
On May 23, 1991, Judge Jolly entered a one-paragraph order denying the Amended Rule 20 petition. On May 31, 1991, Johnson appealed from that order. On June 5, 1991, the parties filed a joint motion in this court, seeking a remand with instructions for the trial court to file specific findings of fact with regard to each material issue of fact in the case. On June 7, 1991, this court remanded the case to the trial court with directions that the trial court file written findings of fact in support of its order denying Johnson's petition, as required by Rule 20.9(d), A.R.Cr.P.Temp., and this court's order of April 10, 1990. On June 17, 1991, Judge John Jolly filed a more specific order dated June 14, 1991, which denied Johnson's Rule 20 petition. In that order, Judge Jolly found that of the 13 claims which Johnson asserts, 8 claims were procedurally barred and, alternatively, lacked merit and the remaining 5 claims, although not barred, lacked legal merit.
 I. Procedurally Barred Claims
Rule 20.2(a)(3), A.R.Cr.P.Temp., provides: "A petitioner will not be given relief under this rule based upon any ground . . . [w]hich could have been but was not raised at trial . . ." except for claims that the court lacked jurisdiction.
Rule 20.2(a)(4), A.R.Cr.P.Temp., provides: "A petitioner will not be given relief under this rule upon any ground . . . [w]hich was raised or addressed on appeal. . . ."
Rule 20.2(a)(5), A.R.Cr.P.Temp., provides: "A petitioner will not be given relief under this rule based upon any ground . . . [w]hich could have been but was not raised on appeal . . ." except for claims that the court lacked jurisdiction.
These procedural default rules have been uniformly enforced by the courts of this state in capital cases. Ex parteSingleton, 548 So.2d 167, 169-71 (Ala. 1989); Ex parteClisby, 501 So.2d 483, 484 (Ala. 1986); Singleton v.State, 587 So.2d 1117 (Ala.Cr.App. 1991); Hubbard v.State, 584 So.2d 895 (Ala.Cr.App. 1991); Baldwin v.State, 539 So.2d 1103, 1104-05 (Ala.Cr.App. 1988), *Page 1292 cert. denied, 493 U.S. 874, 110 S.Ct. 206,107 L.Ed.2d 159 (1989).
Consistent with the trial court's findings, we hold that the following claims raised by Johnson in his amended petition are procedurally barred under Rules 20.2(a)(3) and 20.2(a)(5), A.R.Cr.P.Temp., because these claims could have been but were not raised either at trial or on direct appeal:
 1) his claim that the jury was not charged on the lesser included offense of felony murder;
 2) his claim that the jury did not receive proper instructions on reasonable doubt;
 3) his claim that the court incorrectly failed to find the existence of statutory mitigating circumstances;
 4) his claim that the pre-sentence report was inaccurate and prejudicial to petitioner;
 5) his claim that the sentence was imposed on the basis of facts not in the record; and
 6) his claim that the override of the jury's recommendation was unconstitutional.
On direct appeal, Johnson raised and this court addressed the issue of whether the "trial court erred in refusing his motions for judgment of acquittal on the grounds that there was no proof that he was in Morgan County, where the murder was committed, and no proof that the gun which he possessed at the time he was arrested was used in the shooting." Johnson v.State, 521 So.2d 1006, 1012 (Ala.Cr.App. 1986),aff'd, 521 So.2d 1018 (Ala.), cert. denied,488 U.S. 876, 109 S.Ct. 193, 102 L.Ed.2d 162 (1988).
In his Amended Rule 20 petition Johnson now claims that due process requires that his conviction be set aside because of an alleged insufficiency of proof.
We hold that to the extent that this claim constitutes the same insufficiency-of-evidence issue asserted on direct appeal, this claim is procedurally barred from review under Rule 20.2(a)(4), A.R.Cr.P.Temp., because it was raised or addressed on appeal. We likewise hold that to the extent that this claim differs from the insufficiency of evidence issue asserted on direct appeal, this claim is procedurally barred from review under Rule 20.2(a)(5), A.R.Cr.P.Temp., because it could have been but was not raised on appeal.
On direct appeal, this court addressed sua sponte
the issue of whether the surgical procedure performed on Johnson, pursuant to a search warrant to remove a bullet from his back, constituted an unconstitutional search and held that it did not. Johnson v. State, supra,521 So.2d at 1014-15.
In his Amended Rule 20 petition Johnson now claims that he was convicted of a capital offense based on evidence seized as a result of searches conducted in violation of the United States and Alabama Constitutions. Johnson argues in particular that 1) the seizure of the revolver from under the mattress in a motel room occupied by Johnson resulted from an unconstitutional search; 2) the surgical procedure performed on his body constituted an unconstitutional search; and 3) the admission of this illegally obtained evidence at trial prejudiced him.
We hold that the claim involving the seizure of the revolver is procedurally barred under Rule 20.2(a)(3) and 20.2(a)(5), A.R.Cr.P.Temp., because this claim could have been but was not raised at trial or on direct appeal. We likewise hold that Johnson's search and seizure claim involving the bullet that was removed from his back is procedurally barred under Rule 20.2(a)(4), A.R.Cr.P.Temp., because it was addressed and rejected on the merits on direct appeal.
 II. The Brady v. Maryland Claim
Johnson contends that the State failed to produce exculpatory information in violation of Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In particular, Johnson argues that although his trial counsel filed a discovery motion that requested, among other things, all information favorable to the defense, the state did not produce or disclose 1) documentary evidence, including an investigatory report of the crime prepared by the Alabama Bureau of Investigation ("ABI Report"), that the state was investigating two other suspects *Page 1293 
in connection with the Cantrell homicide; 2) statements of some persons present in the motel room when Johnson was arrested, which statements allegedly contradicted the statement of David Lindsey, which implicated Johnson in the Cantrell homicide; and 3) the short synopsis of the lengthy ABI report, which indicated that the victim, Kenneth Cantrell, fired at the robbers before they fired at him.
"A Brady violation occurs where: 1) the prosecution suppressed evidence; 2) the evidence was favorable to the defendant; and 3) the evidence was material to the issues at trial." Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990).
 A. The "Other Suspects" Information
We hold that the prosecutor's failure to disclose the "other suspects" information contained in the ABI report and the police file did not violate Brady v. Maryland for the following reasons.
First, the fact that there were other suspects was not necessarily exculpatory evidence because an eyewitness, the victim's wife, testified that two robbers entered the house and fired shots inside it. Hence, the fact that law enforcement officials were looking for the other person or persons who acted in concert with Johnson in perpetrating the attempted robbery and homicide in no way exculpates Johnson.
Secondly, the "other suspects" information was not suppressed. Johnson's trial counsel both testified that they knew before trial that there were other suspects in the case and that Sergeant Newell of the ABI had specifically informed them before trial that there were other suspects. Hence, because Johnson's trial counsel had independent knowledge of the "other suspects" information, the "other suspects" information contained in the ABI report and police files cannot be said to have been suppressed.
Finally, even if, arguendo, the "other suspects" information had been favorable to Johnson and even if,arguendo, the defense had not known this information prior to trial, the "other suspects" information is still not material to the issues at trial.
"The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." UnitedStates v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383,87 L.Ed.2d 481 (1985).
In Hendrix v. State, 589 So.2d 769 (Ala.Cr.App. 1991), we held that even if the prosecution had suppressed evidence concerning six other suspects, the defendant would not be entitled to any relief because there was no reasonable probability that if the evidence of the other suspects had been disclosed the result of the proceeding would have been different.
Under Alabama law, moreover, "other suspect" information isnot admissible. "It is recognized that an accused is not entitled to prove, without more, that another has been suspected of committing the crime for which the accused is being tried." C. Gamble, McElroy's Alabama Evidence
§ 48.01(9) (4th ed. 1991). Most recently, in Tomlin v.State, 591 So.2d 550, 558 (Ala.Cr.App. 1991), this court stated that "[t]he general rule in Alabama is that an accused is not entitled to introduce testimony that someone else was suspected of committing the crime for which he is being tried."
Applying these principles to this case, there is no reasonable probability that, had the ABI report and police files been disclosed to the defense, the result of the proceedings would have been different. Johnson has not established that anything in the ABI report or police files concerning "other suspects" would have been admissible at trial. Even if the information were admissible, that information could have merely confirmed that Johnson did not act alone, as corroborated by the testimony of the victim's wife, who was an eyewitness to the homicide.
Johnson, moreover, has offered absolutely no evidence that disclosure of the "other suspects" information might, to a reasonable probability, have changed the outcome of the proceeding. For example, Johnson *Page 1294 
did not present the alleged informant at the hearing on his Amended Rule 20 petition, nor did he make any apparent attempt to determine the identity of that informant for the purpose of establishing that the informant's tip was exculpatory and material.
Hence, the trial court properly ruled that the prosecutor's failure to disclose the "other suspects" information contained in the ABI report and police files did not violate Brady v.Maryland.
 B. The Statements of Persons Present in the Motel Room
We hold that the prosecutor's failure to disclose the statements and/or summaries of the statements of Tommy Rudd, Gene Loyd, Russell Lovell, and Jay Robertson did not violateBrady v. Maryland.
First, there has been no showing that this information was not available to the defense at the time of the trial. There is no Brady violation where the information in question could have been obtained by the defense through its own efforts. May v. Collins, 904 F.2d 228, 231 (5th Cir. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 907,116 L.Ed.2d 808 (1992).
Second, the information in question is not exculpatory. The statements of the four men are not clearly contradictory of David Lindsey's testimony. Nothing in the two statements of Rudd contradicts Lindsey's trial testimony. Nothing in Loyd's statement contradicts Lindsey's trial testimony — because of Loyd's admittedly intoxicated state on Tuesday, March 13, 1984, Loyd could neither confirm nor deny whether Johnson discussed the events surrounding his gunshot wound at that time. Assuming that the summary of Lovell's statement is accurate, Lovell's statement does not contradict Lindsey's trial testimony. Lovell said only that he never heard Johnson say anything about being shot "during the time the four of us were at the motel." The summary of Lovell's statement makes it clear that "the four of us" were Johnson, Lovell, Loyd, and Roberson. The Lovell summary does not say anything about what was said or not said when Lindsey was there. Finally, the summary of Roberson's statement, if accurate, does not say anything about what was said or not said when Lindsey was present in the motel room.
Third, the information in question is not material because Johnson has failed to carry his burden of showing that if the information had been disclosed to the defense, the outcome of the trial probably would have been different. United Statesv. Bagley, supra, 473 U.S. at 682, 105 S.Ct. at 3383. The out-of-court statements and summaries are not admissible in evidence, and Johnson has not proven how the four men would have testified that they had been called to the stand and placed under oath. Johnson did not produce any of the four men as a witness at the evidentiary hearing in this proceeding, and this court is left with no sworn testimony at all as to what any of them would have actually said had they been called as witnesses at trial. Moreover, even if it could be assumed that each of the four men would have testified exactly as indicated in their statements or the summaries of their statements, Johnson has not shown that this hypothetical testimony would have produced a different result in the trial.
Hence, the trial court properly ruled that the prosecutor's failure to disclose the statements and/or summaries of the statements of Rudd, Loyd, Lovell, and Robertson did not violateBrady v. Maryland.
 C. The Synopsis of the ABI Report
In the 10-sentence synopsis of the lengthy ABI report, the following statement appears: "The victim fired six rounds at the [two] subjects, possibly hitting one subject. The subjects returned fire, striking the victim in the upper part of the body four times. A fifth shot struck the victim on the right hand." This synopsis was not given to the defense.
We hold that the prosecutor's failure to disclose the synopsis of the ABI report did not violate Brady v.Maryland for the following reasons:
The statement in question is clearly a misinterpretation of the contents of the ABI report. The only eyewitness whose statement is summarized in the report is the widow, Mrs. Nell Cantrell. Her statement, *Page 1295 
which was not taken by the author of the synopsis, simply does not say, or even imply, that the victim started shooting first. An officer's erroneous out-of-court interpretation of a witness's statement, especially one that the officer did not take, is not admissible evidence. Hence, the statement in question, which has no basis in fact and is a misinterpretation of the contents of the ABI report, is clearly not exculpatory.
In addition, it is immaterial whether the robbery victim or the robbers started shooting first because a robber has absolutely no legal right to kill a robbery victim who is attempting to defend himself or his property. In Hopper v.Evans, 456 U.S. 605, 613, 102 S.Ct. 2049, 2054,72 L.Ed.2d 367 (1982), the Supreme Court held that it would be "an extraordinary perversion of the law" to say that intent to kill is not established when a robber shoots the robbery victim to prevent the victim from harming the robber. Because it is legally immaterial whether Johnson and his fellow robber or their victim fired first, any information indicating that the victim may have fired first is neither exculpatory nor material under Brady and Bagley.
Hence, because there is no reasonable probability that disclosure of the erroneous statement in the synopsis would have produced a different result, the trial court properly ruled that the prosecutor's failure to disclose the synopsis did not violate Brady v. Maryland.
 III. Ineffective-Assistance-of-Counsel Claims
Johnson contends that he was denied effective assistance of both his trial and appellate counsel at the guilt and sentencing stages of his trial.
In Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court held that there were two necessary components of an ineffective-assistance-of-counsel claim:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that counsel's deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.
With regard to the performance component of an ineffective assistance of counsel claim, the Supreme Court inStrickland, supra, held:
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 [102 S.Ct. 1558, 1574-75, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See Michel v. Louisiana, supra
[350 U.S. 91], at 101 [76 S.Ct. 158, 164, 100 L.Ed. 83]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
466 U.S. at 689-90, 104 S.Ct. at 2065.
The Supreme Court in Strickland, moreover, reiterated that "[i]t is not enough for the defendant to show that the errors had *Page 1296 
some conceivable effect on the outcome of the proceedings . . .", because "[v]irtually every act or omission of counsel would meet that test. . . ." 466 U.S. at 693, 104 S.Ct. at 2067.
More specifically, the Supreme Court held inStrickland as follows:
 "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."
466 U.S. at 695, 104 S.Ct. at 2068-69.
We shall not subject each of Johnson's ineffective-assistance-of-counsel claims to the bipartite calculus articulated in Strickland v. Washington,supra.
 A. Ineffective Assistance of Trial Counsel During Guilt Phase
Johnson contends that trial counsel Joseph W. Propst II and Thomas M. DiGiulian mistakenly believed that the felony murder doctrine could eliminate the need to prove the intent to kill that is necessary for a capital murder conviction and that this total misunderstanding of the law led to other fundamental errors resulting in Johnson's conviction and death sentence. In particular, Johnson argues that this total misunderstanding of the law led trial counsel to believe that Johnson's only available defense was that Johnson was not present at the Cantrell home on March 11, 1984.
"Aided by the magnifying glass of hindsight and armed with information obtained and legal cases decided after his conviction," Johnson's present counsel posit that according to Mrs. Cantrell's trial testimony, Johnson was one ofthree men who came to the Cantrell home on March 11, 1984, to perpetrate a robbery; that only the two men accompanying Johnson entered the Cantrell residence and fired shots at the victim; and that Johnson merely stood outside the carport door and was wounded by a bullet fired by the victim, which travelled through a glass pane on the carport door and entered Johnson's back. Bell v. State, 518 So.2d 840
(Ala.Cr.App. 1987), cert. denied, 486 U.S. 1036,108 S.Ct. 2024, 100 L.Ed.2d 611 (1988).
1. Under this new scenario, Johnson claims that trial counsel were ineffective for failing to argue that although Johnson was a participant in the robbery, he did not participate in the murder and he did not have the requisite intent to kill.
The record reveals that as part of their pre-trial preparation, defense counsel talked with some potential witnesses, and they talked a great deal and continuously with Johnson. According to defense counsel, Johnson told them "the whole story," and their defense theory was based upon what Johnson told them. The defense theory was that Johnson was not present and was not involved in the crime at all.
Defense counsel made a reasoned, strategic decision not to argue inconsistent, alternative theories of defense — such as that Johnson was not present at the crime scene and alternatively that Johnson was present but did not intend that the victim be killed. That strategic decision not to argue inconsistent theories was based upon defense counsel's judgment that, as a practical matter, there was little or no chance the jury would fail to find that Johnson had the intent to kill if the jury concluded that he had been at the scene. Trial counsel knew at the time they made their strategic decision that deliberation and premeditation were not required under Alabama law, and that it was irrelevant whether Johnson had the intent to kill before he went into the house and the shooting began.See Commentary to § 13A-6-2, Code of Alabama 1975 (recognizing that any distinctions based upon deliberation and premeditation have been eliminated from the definition of murder). Trial counsel also knew that if Johnson had the requisite intent to kill, Johnson could be guilty of the capital offense even though he was not the actual triggerman. Section 13A-5-40(c), Code of *Page 1297 
Alabama 1975; Ex parte Raines, 429 So.2d 1111, 1112-13
(Ala. 1982), cert. denied, 460 U.S. 1103,103 S.Ct. 1804, 76 L.Ed.2d 368 (1983).
Finally, because of Johnson's adamant refusal to testify, trial counsel were unable to present any evidence that Johnson was present at the scene and involved in the crime but that he lacked the requisite intent to kill. Moreover, the eyewitness, Mrs. Cantrell, never testified at trial that there were three perpetrators — her testimony clearly states that two men forced their way into her house and that both men fired shots at her husband. As a result, there was no reasonable basis in the evidence for an argument that Johnson was present and involved in the robbery but did not participate in the shooting and lacked the requisite intent to kill.
We, therefore, hold that defense counsels' reasoned, strategic decision was not outside "the wide range of reasonable professional assistance." Strickland v.Washington, supra, 466 U.S. at 689, 104 S.Ct. at 2065. In addition, Johnson has not established a reasonable probability that if trial counsel had argued that he was present but did not participate in the shooting and that he lacked the intent to kill, the result of the trial would have been different. Hence, the trial court properly denied Johnson's claim of ineffective assistance on this ground.
2. Johnson claims that his trial counsel were ineffective because they failed to object to the trial court's instructing the jury on capital murder and on the aiding and abetting doctrine as applied to capital murder cases.
Trial counsel insisted that the trial court instruct the jury that Johnson could not be convicted of the capital offense unless he had the requisite intent to kill, and the court gave that instruction to the jury.
The instructions that the court gave the jury on the elements of the capital offense and on the aiding and abetting doctrine as it applies to capital murder cases followed the pattern jury instructions promulgated by the Alabama Supreme Court, and those instructions were correct. See Proposed Pattern JuryInstructions for use in the Guilt Stage of Capital Cases TriedUnder Act. No. 81-178 (approved Dec. 6, 1982), 2-5, 13-16.
There was an evidentiary basis for the capital murder charge and for the aiding and abetting instruction. As a result, there was no valid basis to object to those instructions.
There was no basis to object to the aiding and abetting or complicity instructions on the ground that the indictment did not expressly or separately charge Johnson with complicity or with aiding and abetting. Under Alabama law, the distinction between principals and accessories has long been abolished; one charged as a principal may be convicted as an accomplice, and the State is not required to notify the defendant in the indictment or otherwise that it is proceeding under a complicity theory. Hyter v. State, 545 So.2d 194, 197
(Ala.Cr.App. 1989); Wallace v. State, 530 So.2d 849,855-56 (Ala.Cr.App. 1987), cert. denied, 530 So.2d 861
(Ala. 1988).
Trial counsel's not objecting to the court's action in submitting capital murder and complicity charges to the jury was not outside "the wide range of reasonable professional assistance." Strickland v. Washington, supra,466 U.S. at 689, 104 S.Ct. at 2065. In addition, Johnson has failed to demonstrate a reasonable probability that if counsel had objected, the result of the trial would have been different. Hence, the trial court properly denied Johnson's claim of ineffective assistance of counsel on this ground.
3. Johnson claims that his trial counsel were ineffective because they failed to ask the trial court to instruct the jury on felony murder as a lesser included offense.
Trial counsel filed 21 written requests for jury instructions at the guilt stage, and 18 of those requested instructions were given. The trial court instructed the jury on the lesser included offenses of intentional murder and robbery, and it submitted verdict options to the jury on those lesser offenses. The court did not instruct the jury on felony murder as a lesser included *Page 1298 
offense or submit a felony murder verdict option to the jury. No felony murder instruction or verdict option was requested by trial counsel.
Trial counsel was aware that intent to kill was a required element of the capital offense and insisted that the court instruct the jury that Johnson could not be convicted of a capital offense unless he had the requisite intent to kill, and the court gave that instruction to the jury. However, trial counsel was also aware that under Alabama law Johnson could be convicted of the intentional killing component of the capital murder even if he was not the triggerman who actually killed the victim. § 13A-5-40(C), Code of Alabama 1975. Trial counsel, furthermore, could not present any evidence that Johnson was present at the scene but that he lacked the intent to kill because Johnson adamantly refused to testify.
Not requesting a felony murder instruction was consistent with the theory of defense, which was that Johnson was not present at and was not involved in the crime. That defense theory was based upon what Johnson had told defense counsel. As the Supreme Court has held: "[T]he reasonableness of counsels' actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland v.Washington, supra, 466 U.S. at 691, 104 S.Ct. at 2066.
In addition, there was simply no basis for a felony murder instruction in view of the evidence in this case. There was no reasonable basis in the evidence from which the jury could conclude beyond a reasonable doubt that Johnson was guilty of robbery during which a killing occurred and at the same time have a reasonable doubt as to whether Johnson had the necessary intent to kill. The testimony of eyewitness Nell Cantrell was that two men forced their way into her home and thatboth men fired shots at her husband. While the shots of the second "masked" robber were not the shots that killed the victim, there was no reasonable basis for the jury to doubt that the second robber had the intent to kill, attempted to kill, and actively participated in the killing. The factual issue was whether Johnson was the second robber, i.e., whether Johnson was not present at the scene and was not involved in any way. The defense was that Johnson was not the second robber and that Johnson was neither present nor involved in any way. Under the evidence, Johnson was either the second robber in the house who fired the shots at the victim or he was not involved in the crime at all. Therefore, Johnson was either guilty of capital murder or of nothing at all; no felony murder instruction was supported by the evidence, and none should have been given.
In view of the defense theory and the evidence that was presented at trial, Johnson has not established that defense counsel's failure to ask for an instruction regarding felony murder as a lesser included offense placed their professional performance outside the "wide range of reasonable professional assistance." Strickland v. Washington, supra,466 U.S. at 689, 104 S.Ct. at 2065.
Even if we assume, arguendo, that failure to request a felony murder instruction constitutes ineffective assistance, Johnson has failed to establish the prejudice component thatStrickland requires. Johnson has not proven by "a reasonable probability" that if counsel had requested a felony murder instruction, the result of the proceeding would have been different. Because such an instruction was not required under the evidence and because the jury would not have returned a verdict on felony murder absent an evidentiary basis for such a verdict, requesting such an instruction would not have changed the outcome of the trial. Hence, the trial court properly denied Johnson's claim of ineffective assistance of counsel on this ground.
4. Johnson claims that three sentences of trial counsel's closing argument affirmatively stated to the jury that proof of felony murder would support a capital murder conviction.
Defense attorney DiGiulian delivered an effective closing argument that covers 55 legal-size pages of the record. In one three-sentence part of that lengthy argument, he stated: *Page 1299 
 "You are going to have to go back there, and you are going to have to find, in order to convict and find Keith guilty, you are going to have to find that the State has proved an intentional killing occurred, a forcible robbery or intent to rob, and going to have to find that Keith was one of the men that was out there. That is what you are going to have to do in order to find each and every one of those beyond a reasonable doubt and to a moral certainty. Each one of you is going to have to do that."
Neither in that passage nor in any other part of his closing argument did Mr. DiGiulian affirmatively state to the jury that it was not necessary for the state to prove that Johnson had the intent to kill.
Shortly before Mr. DiGiulian made the remark in question, the trial judge, after reminding the jury that he had told them that opening statements do not constitute the law, instructed them that closing arguments "fall in the same category." After the closing arguments, the trial judge instructed the jury that it was the judge's duty to decide and define the law for the jury. While defining the law to the jury, the trial court repeatedly and emphatically instructed the jury that a necessary element of the capital offense was that the defendant had committed an intentional killing or had intentionally aided and abetted an intentional killing, and that the jury could not convict the defendant unless it was convinced beyond a reasonable doubt of that necessary element. The law presumes that jurors follow their instructions. Parker v.Randolph, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139,60 L.Ed.2d 713 (1979).
The record reveals that Mr. DiGiulian understood that there had to be evidence of Johnson's participation in the actual murder in order for Johnson to be convicted of the capital offense. Furthermore, before closing argument, defense counsel submitted to the judge a three-paragraph written requested instruction that emphasized and detailed the burden on the state to prove beyond a reasonable doubt that Johnson was guilty of an intentional killing before he could be convicted of the capital offense. The judge gave that jury instruction verbatim.
Mr. DiGiulian's closing argument was made pursuant to the defense theory that Johnson was not present at the scene of the crime and was not in any way involved in it.
Contrary to Johnson's assertions, Mr. DiGiulian did not affirmatively state to the jury that it was not necessary for the state to prove that he had the intent to kill. Instead, Mr. DiGiulian was stressing to the jury those elements of the capital offense that the defense theory of the case had focused upon. The Eleventh Circuit Court of Appeals has noted that special deference is due to an attorney's closing argument strategy because it is "an inherently subjective task."Thompson v. Wainwright, 787 F.2d 1447, 1455 (11th Cir. 1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986,95 L.Ed.2d 825 (1987).
Therefore, given the theory of the defense, Johnson has failed to establish that the three sentences of Mr. DiGiulian's closing argument that are in question constituted an unprofessional error outside the "wide range of reasonable professional assistance." Strickland v. Washington,supra, 466 U.S. at 689, 104 S.Ct. at 2065. Moreover, there is no reasonable probability that, if Mr. DiGiulian had not uttered those three sentences, the result of the trial would have been different.
5. Johnson claims that his trial counsel were ineffective for failing to object to one passage of the prosecutor's closing argument at the guilt stage.
In his closing argument, the prosecutor made the following statements:
 "[I]f these two men went in, and if they went in there to rob this dear lady and her husband, the act of one is the act of both, the act of one is the act of all, and what one does the other is responsible for. . . . When those two men busted through that door out there that night, everything that each of them did, the other was responsible for under the law of the State of Alabama, and one is just as equally guilty for the death of this man as the other."
Defense counsel did not object to this portion of the prosecutor's closing argument. *Page 1300 
Before closing argument, the trial court had reminded the jury that closing arguments, like opening statements, do not constitute the law. After the closing arguments, the trial court instructed the jury that it was the court's duty to decide and define the law for the jury — this instruction was given at the request of defense counsel. The court also gave a full and accurate complicity instruction that corrected what the prosecutor had said. The court's instructions on complicity followed the Alabama Supreme Court's pattern instruction on that subject. The court also gave, at the request of defense counsel, an instruction cautioning the jury that what the attorneys had said was not evidence.
Because the prosecutor's misstatements were not material to the theory of defense, defense counsel's failure to object to that argument was not outside "the wide range of reasonable professional assistance." Strickland v. Washington,supra, 466 U.S. at 689, 104 S.Ct. at 2065. Because, moreover, the court issued a curative instruction to the jury, Johnson has also failed to establish a reasonable probability that if that counsel had objected to the prosecutorial argument, the result of the trial would have been different.See Shriner v. Wainwright, 715 F.2d 1452, 1459 (11th Cir. 1983), cert. denied, 465 U.S. 1051,104 S.Ct. 1328, 79 L.Ed.2d 723 (11th Cir. 1984), ("with a properly instructed jury, there is nothing to show the jury relied on the prosecutor's remarks").
6. Johnson claims that counsel rendered ineffective assistance of counsel in their cross-examination of David Lindsey.
Defense counsel demanded a preliminary hearing for discovery purposes to cross-examine prosecution witnesses before trial. One of those witnesses was David Lindsey. Defense counsel reviewed that preliminary hearing transcript, including Lindsey's testimony, in detail before trial. They also interviewed the officer in charge of the investigation several times, and they talked a great deal with Johnson about the facts of the case. Their conduct of the defense was based upon what Johnson told them, and Johnson told them "the whole story." In addition to all those efforts, defense counsel employed an investigator to help them find any useful impeachment information about Lindsey. That investigator worked on the case for more than nine weeks.
Defense counsel effectively cross-examined David Lindsey. Defense counsel brought out a contradiction between Lindsey's trial testimony and the testimony that he had given at the preliminary hearing. Defense counsel suggested that Lindsey was biased against Johnson because Johnson and Lindsey's wife had had an affair. Trial counsel forced Lindsey to admit that he had been convicted of illegal possession of controlled substances, specifically metamphetamines, and that Lindsey shot the drug into his arms. As defense counsel argued to the jury, "Mr. Lindsey was a man who mainlined speed, shot it up his arm."
While Johnson's present counsel makes it clear that he would have followed a different strategy in cross-examining Lindsey, that is not the test for ineffective assistance of counsel. "There are countless ways to prove effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland v.Washington, supra, 466 U.S. at 689, 104 S.Ct. at 2065.
Moreover, Johnson has not even proven an evidentiary basis for his alternative strategy. Johnson has not shown that any additional information in the investigator's report would have been useful in impeachment, or even admissible. Johnson did not offer as witnesses at the evidentiary hearing any of the four men who were present at the motel and who he now hopes could have impeached Lindsey's testimony. Absent a showing that real impeachment evidence was available and could have been put forward at trial, Johnson has not shown that it would have made any difference at all to cross-examine Lindsey concerning those statements. Finally, the deposition of Lindsey by Johnson's present counsel does not establish that their latest cross-examination strategy would have been any more effective than the cross-examination *Page 1301 
of Lindsey that actually occurred.
Therefore, Johnson has failed to show that trial counsel's cross-examination of Lindsey was outside "the wide range of reasonable professional assistance," or that there is a reasonable probability that if counsel had used a different cross-examination strategy, the trial would have ended differently. Strickland v. Washington, supra,466 U.S. at 689, 104 S.Ct. at 2065.
7. Johnson claims that trial counsel were ineffective for not making a different objection to statistical evidence concerning the glass fragments that were found on the bullet removed from Johnson's body.
During the examination of the forensic expert who testified that the glass fragments found on the bullet removed from Johnson's back had exactly the same refractive indexes as the glass in the door pane through which Mr. Cantrell had fired at the robber, the following occurred:
 "THE COURT: Does your science provide you any judgment as to the mathematical probabilities of these two comparisons as to indicate them from being from the same source or not?
 "THE WITNESS: There has been some statistics that have been done and accumulated from the F.B.I. that I am familiar with.
"THE COURT: What is the mathematical probability?
 "MR. PROPST: Judge, his knowledge of that is contained through hearsay.
 "THE COURT: No, sir, he is an expert witness. Go ahead.
 "THE WITNESS: The data that has been accumulated by the Federal Bureau of Investigation that they have found the same physical properties in three point eight percent of their glass samples that they have examined.
 "THE COURT: What does that mean? Can you — can you explain it any more? I don't know that I understand that exactly. Maybe the jury does. I don't believe I do.
 "THE WITNESS: From a statistical standpoint, utilizing the F.B.I., four out of one hundred samples could have the same physical properties.
"THE COURT: Four out of one hundred?
"THE WITNESS: Yes, sir.
"THE COURT: All right. Thank you."
Johnson contends that this excerpt reveals that the state's forensic expert was permitted to testify that there was a 96% probability that the bullet that struck Johnson passed through the Cantrells's carport door, and that defense counsel rendered ineffective assistance by objecting on hearsay rather than on lack of foundation grounds. We disagree.
Contrary to Johnson's claim, the forensic expert didnot testify that there was a 96% probability that the glass embedded in the bullet removed from Johnson's back matched the glass from the glass pane in the victim's door. Instead, he confined his testimony about probabilities to the F.B.I. samples, and he testified that if one utilized the F.B.I. samples, then four out of 100 samples could have the same physical properties as the glass in this case. The forensic expert did not testify that the F.B.I. samples were representative of glass in North Alabama or in the county as a whole, and he expressly stated that he could not say that the glass fragments from the bullet removed from Johnson's back came from the Cantrells's door pane.
Furthermore, even if the testimony was as Johnson construes it, the failure of trial counsel to make a foundation objection does not rise to the level of ineffective assistance of counsel. Not only was the failure to object on that specific ground not outside "the wide range of reasonable professional assistance," but Johnson has also failed to make the required showing of prejudice. Strickland v. Washington, supra,466 U.S. at 689, 104 S.Ct. at 2065.
Even without the probability statement, the properly admitted evidence concerning the refractive indexes of the glass was very specific and probative. Moreover, given the position of the victim at the time of the gunfight (sitting on a couch in the living room) and the height of the bullet wound in Johnson's back as compared with *Page 1302 
the height of the bullet hole in the glass pane of the carport door at the victim's house, the jury could reasonably conclude that the bullet which was removed from Johnson's back was fired by the victim. This conclusion is bolstered by the fact that the bullet removed from Johnson's back was also of the same caliber, had been made by the same manufacturer, and had the same number of lands and grooves as other bullets fired from the pistol used by the victim.
Finally, Johnson has not even suggested any alternative explanation for how he came to have a bullet with all those similarities to other bullets fired from the victim's pistol lodged in his back shortly after the exchange of gunfire took place. Therefore, in light of this overwhelming independent evidence linking the bullet removed from Johnson's back to the bullet that Cantrell fired at the second robber, there certainly is not a reasonable probability that if trial counsel had made a different objection to the probability evidence, the result of the trial would have been different. Hence, the trial court properly denied Johnson's claim of ineffective assistance of counsel on this ground.
8) Johnson claims that trial counsel were ineffective for not objecting on search and seizure grounds to the introduction into evidence of the .357 magnum pistol that was found in the motel room when Johnson was arrested.
We hold that because the search of the motel room and seizure of the pistol were valid, the action of trial counsel in not objecting to the evidence could not have been ineffective assistance.
First, Johnson does not have standing to raise this claim, because he did not have a legitimate expectation of privacy in the motel room. The motel room that was searched was not registered in Johnson's name, he had not rented it; that room had been rented by three other men before Johnson even arrived. One who does not have a legitimate expectation of privacy in the property or premises of another where evidence is found cannot litigate a Fourth Amendment claim. Rawlings v.Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633
(1980). Hence, Johnson does not have a standing to adjudicate a claim involving the search of another's motel room.
Second, the search of the area under the mattress was reasonable under the probable cause coupled with exigent circumstances exception to the warrant requirement. Not only did the presence of marijuana in plain view in the motel room justify the search for more marijuana in the motel room, but the officers also had probable cause to believe that Johnson had been in an armed robbery that resulted in a shootout, that Johnson had been wounded in the back, and that Johnson had a pistol with him. The officers, moreover, observed that Johnson had in fact been wounded, and they noticed bloodstained linens on the bed near Johnson's clothing in the motel room.
Furthermore, the officers were confronted with an exigent circumstance — the danger that if the pistol was left in the motel room while the officers sought a warrant, one or more of the three other men who were in the motel room could have tampered with or removed the pistol. Hence, because the search and seizure of the pistol was justified, defense counsel did not render ineffective assistance of counsel in failing to object to the evidence on that ground. See Love v.State, 377 So.2d 8, 11-12 (Ala.Cr.App. 1979) (pistol seized without warrant where officer had probable cause to believe defendant committed homicide and that there was a pistol in the residence where defendant was arrested). See alsoPalmes v. Wainwright, 725 F.2d 1511, 1523 (11th Cir.),cert. denied, 469 U.S. 873, 105 S.Ct. 227,83 L.Ed.2d 156 (1984) ("[t]he Sixth Amendment right to effective assistance of counsel does not require counsel to raise every objection without regard to its merits").
 B. Ineffective Assistance of Appellate Counsel During Guilt Phase
Johnson claims that attorney John Mays, who was appointed to represent Johnson on his direct appeal, rendered ineffective assistance by, he says, omitting key facts from the statement of facts, omitting *Page 1303 
crucial issues from the statement of issues, and failing to make any argument at all to the Alabama Supreme Court in his petition for certiorari review. We disagree.
In representing a defendant on appeal, the best appellate attorneys make strategic decision narrowing the issues that they will raise on appeal rather than attempting to raise every conceivable issue. Jones v. Barnes, 463 U.S. 745,751-1, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983).
In preparing for the appeal and in deciding what issues to raise, Mr. Mays studied the trial record very carefully. He did extensive research, including the examination of law review articles, and he selected what in his judgment were the best available issues to raise on appeal. In selecting issues, Mr. Mays carefully considered how arguments in support of these issues could be answered by the other side and how the appellate court might respond to those issues. Moreover, during the course of handling Johnson's appeal, Mr. Mays consulted with both trial counsel concerning issues in the case. Mr. Mays based his lengthy statement of the facts contained in appellant's brief upon the detailed testimony of witnesses at trial.
After this court affirmed the conviction and sentence, Mr. Mays submitted the same brief to the Alabama Supreme Court in support of a petition for writ of certiorari. He did so because he believed that the arguments he had made were adequate legal arguments based upon the applicable law.
The attack of Johnson's present counsel on Mr. Mays's performance consists primarily of a long list of things that they would have done differently had they been representing Johnson on appeal. They argue at length that Mr. Mays rendered ineffective assistance because he failed to include in the statement of facts the "three robbers" theory which they have concocted on this collateral appeal.
We hold that Mr. Mays's appellate representation of Johnson did not fall outside "the wide range of reasonable professional assistance," and that Johnson not only failed to establish the performance deficiency component of this ineffective assistance claim but also failed to establish the prejudice component.
 C. Ineffective Assistance of Trial Counsel During Sentencing Phase
Johnson initially claims that his trial counsel rendered ineffective assistance in the presentation of Johnson's drug abuse as a mitigating circumstance. We disagree.
The record reveals that the trial counsel from the beginning to the end of the sentence proceedings did an effective job presenting Johnson's drug abuse and addiction problem as a mitigating circumstance. Three of the four witnesses presented at the jury sentence proceeding, which the sentencing judge presided over, were called by counsel to testify about Johnson's drug problem. Counsel were handicapped in their presentation of Johnson's drug abuse problem by his adamant refusal to testify at the sentence stage. Johnson, moreover, completely failed to prove at the evidentiary hearing on his Rule 20 petition, as amended, that he ever told trial counsel that he had been on drugs at the time of the crime. While there was some momentary uncertainty about whether the drug abuse level that trial counsel could present would rise to the level of the § 13A-5-51(6) mental state statutory mitigating circumstances, trial counsel never wavered in their determination to present drug abuse as a factor which should be considered in mitigation.
We therefore hold that trial counsels' vigorous and effective efforts to present Johnson's drug abuse as a mitigating circumstance throughout the sentence proceedings do not fall outside the "wide range of reasonable professional assistance." In addition, Johnson has not shown a reasonable probability that any other efforts or tactics by trial counsel relating to the drug abuse problem would have changed the sentence imposed by the trial court.
Johnson also claims that trial counsel rendered ineffective assistance by failing to object to the omission of the "third robber" theory from the statement of facts in *Page 1304 
the pre-sentence report and the court's sentence findings and by failing to include the "third robber" theory in support of Johnson's "minor" participation in the crime.
As discussed earlier, Johnson's "third robber" theory is merely a theory without any evidentiary support, and trial counsels' failure to espouse this theory in the face of overwhelming evidence to the contrary can hardly be deemed deficient performance which prejudiced Johnson.
 D. Ineffective Assistance of Appellate Counsel During Sentencing Phase
Johnson claims that his appellate counsel rendered ineffective assistance by raising only frivolous sentencing issues on appeal instead of raising six substantive sentencing issues.
We have reviewed this issue and agree with the trial court that it lacks merit. Not only has Johnson failed to demonstrate that his appellate counsels' performance with respect to the sentence phase was deficient, but he has also failed to show prejudice resulting from his appellate counsels' performance. We note in particular that on the one hand Johnson chastises his appellate counsel for raising a "frivolous" issue that had already been decided adversely by the Alabama appellate courts, but on the other hand Johnson urges his appellate counsel toraise an issue that has already been decided adversely by the appellate courts.
The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.