WISE, Judge.
The appellant, Timothy Flowers, was convicted of capital murder for intentionally murdering Tommy Philyaw during the course of a kidnapping and a robbery, see §§ 13A-5-40(a)(1) and 13A-5-40(a)(2), Ala. Code 1975. The jury, by a vote of 10 to 2, recommended that Flowers be sentenced to death. The trial court accepted the jury’s recommendation and sentenced *942 Flowers to death. This appeal, which is automatic in a case in which the death penalty has been imposed, followed.
The State’s evidence tended to show the following: On November 28, 2000, Ruby Welch and Brenda Owens[1] reported to police that Tommy Philyaw was missing and that they suspected he had been the victim of a crime. They told police that Owens overheard John Morrow, Flowers’s codefendant, and four other individuals talking about robbing Philyaw. Police went to Philyaw’s trailer and discovered a large quantity of blood on the dirt road near his trailer and Philyaw’s hat near the blood. Philyaw’s truck was missing. The investigation focused on Flowers and his codefendants John Morrow, Elizabeth Fil-lingim, Angela Morrow, and Kendall Packer,[2] after several of the codefendants were interviewed by police and admitted their participation in the events that led to Phi-lyaw’s murder. The five codefendants agreed to rob Philyaw of his Christmas club money — a little over $1,000. Then-plan called for one of the females to lure Philyaw from his trailer, where the group would then rob him.
On November 27, 2000, either Fillingim or Angela Morrow went to Philyaw’s trailer and, pretending to have car trouble, asked for Philyaw’s help. Philyaw followed the individual back to her car. Flowers, John Morrow, and Packer were waiting at the car, and when Philyaw arrived they began beating him with a metal pipe. They then put Philyaw in the back of his truck and drove to a secluded area. While they were driving Philyaw begged for his life and told them that he could get them more money; they continued to beat him with a pistol until they arrived at an isolated area. Flowers shot Philyaw in the back while he was lying face down in the bed of the truck. The truck was then set on fire.
Flowers led police to the body and to the shotgun used to kill Philyaw. The shotgun belonged to Philyaw. When leading police to the body Flowers said, “I hope you have a strong stomach, because this is where the massacre began.”
The victim’s body was badly burned; the remains weighed 65 pounds. The forensic pathologist, Dr. Kathleen Enstice, testified that she could not conclusively state how many times Philyaw had been shot because the fire destroyed some of the evidence. She testified that Philyaw was alive when the shotgun pellets entered his chest and severed his aorta. Another pellet also entered his right shoulder. This shot was also inflicted before his death. Four pellets were recovered from the bed of the truck. Five spent shells were recovered from the scene. Enstice testified that the cause of death was multiple gunshot wounds and that it was her opinion that Philyaw was dead when his body was set on fire.
*943 Flowers was indicted for murdering Phi-lyaw dining the course of a kidnapping and a robbery, for murdering Philyaw while Philyaw was in a motor vehicle, for conspiring with his codefendants to kill Philyaw during a robbery, and for conspiring with his codefendants to kill Philyaw during a kidnapping. The jury convicted Flowers of two counts of capital murder— murder committed during the course of a kidnapping and murder committed during a robbery — and acquitted him of the conspiracy charges.
A separate sentencing hearing was held before the jury. See § 13A-5-45(a), Ala. Code 1975. The jury, by a vote of 10 to 2, recommended that Flowers be sentenced to death. A presentence report was prepared. See § 13A-5-47, Ala.Code 1975. The circuit court held a separate sentencing hearing at which it heard additional mitigating evidence. See § 13A-5-47(c), Ala.Code 1975. The circuit court found as aggravating circumstances that the murder was committed during the course of a kidnapping and a robbery and that the murder was especially heinous, atrocious, or cruel as compared to other capital offenses. See §§ 13A-5-49(4) and 13A-5-49(8), Ala.Code 1975. The circuit court found as mitigating circumstances that Flowers had no significant history of prior criminal activity, § 13A-5-51(l), that he was 18 years old at the time of the murder, § 13A-5-51(7), that he lacked a stable home life, that his mother had died when he was 16, that he lacked an education, and that he abused drugs, § 13A-5-52. After weighing the aggravating circumstances and the mitigating circumstances the circuit court sentenced Flowers to death. This appeal, which is automatic in a case where the death penalty has been imposed, followed. See § 13A-5-55, Ala.Code 1975.

Standard of Review

Because Flowers has been sentenced to death, we review the record of the proceedings in the circuit court for plain error. Rule 45A, Ala.R.App.P., states:
“In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.”
In defining the plain-error standard, this Court has stated:
“The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in' the trial court or on appeal. As the United States Supreme Court stated in United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the plain-error doctrine applies only if the error is ‘particularly egregious’ and if it ‘seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.’ See Ex parte Price, 725 So.2d 1063 (Ala.1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); Burgess v. State, 723 So.2d 742 (Ala.Cr.App.1997), aff'd, 723 So.2d 770 (Ala.1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360 (1999); Johnson v. State, 620 So.2d 679, 701 (Ala.Cr.App.1992), rev’d on other grounds, 620 So.2d 709 (Ala.1993), on remand, 620 So.2d 714 (Ala.Cr.App.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993).”
Hall v. State, 820 So.2d 113, 121-22 (Ala.Crim.App.1999), aff'd, 820 So.2d 152 (Ala.2001), cert. denied, 535 U.S. 1080, 122 S.Ct. 1966, 152 L.Ed.2d 1025 (2002).

*944
Guiltr-Phase Issues

I.
Flowers argues that the circuit court erred in denying his request for youthful-offender (“YO”) status because he had no prior convictions. He asserts that the trial court erred in denying his request based solely on the severity of the capital-murder charges. Flowers cites the Alabama Supreme Court decision in Ex parte Farrell, 591 So.2d 444 (Ala.1991), to support his contention.
The record shows that Flowers filed an application for YO status. The circuit court ordered that the State Probation and Parole Office investigate his application. A report was filed with the circuit court and a hearing was held. After hearing arguments, the circuit court denied the YO application and stated:
“This case, the charge in this case, the additional charges that the defendant has in CC-01-148, burglary, first charge, and receiving stolen property, second charge, and the defendant’s prior run-ins, connections with law enforcement in November 2000, and September 2000, in Escambia County, I believe those charges were domestic violence charges, and domestic violence assault, third, possession of a forged instrument charge. And based on those reasons, Youthful Offender status is being denied.”
(Supplemental record, vol. II, page 11.)
The Alabama Supreme Court in Farrell held that the seriousness of a charge alone is not a sufficient basis on which to deny YO status but that the nature of the facts on which the charge rests may alone be sufficient to deny YO status. The Farrell Court stated:
“If the Legislature provides for and permits youthful offender protection in regard to a criminal charge, then it makes no sense for the judiciary to deny that protection because of that same criminal charge in and of itself. Indeed, such a judicial ruling would make it impossible for the accused to acquire the protection that the Legislature has afforded, because the very charge serving as the basis for allowing the youthful offender petition in the first place would also be used as the reason for denying it. Accordingly, we hold that a criminal charge in and of itself cannot be used as the sole basis for properly denying a petition for youthful offender status....
“We are not saying that the nature of the fact situation on which a charge is based cannot be, in itself, a sufficient reason for denying youthful offender status; to the contrary, we hold that the nature of the fact situation on which a charge is based may, alone, be a sufficient reason for denying youthful offender status. For example, if a minor is charged with first degree assault for beating an elderly person nearly to death with a baseball bat, then the nature of the fact situation on which the first degree assault charge is based could be, in itself, a sufficient reason for properly denying a petition for youthful offender status, although the first degree assault charge in and of itself could not be the basis for denying that petition.”
591 So.2d at 449. See McWhorter v. State, 781 So.2d 257 (Ala.Crim.App.1999), and Miller v. State, 650 So.2d 940, 945 (Ala.Crim.App.1993), rev’d on other grounds, 650 So.2d 947 (Ala.1994).
Although the facts surrounding the criminal charges in this case were horrific by anyone’s standards, the record shows that the circuit court did not deny YO status solely on the severity of the charges. We have upheld the denial of YO status in a similar fact situation. In Duke *945 v. State, 889 So.2d 1, 17 (Ala.Crim.App.2002), we stated:
“ ‘In determining whether to treat a defendant as a youthful offender, the trial court has nearly absolute discretion. Morgan v. State, 363 So.2d 1013 (Ala.Crim.App.1978); see, also, Ex parte Farrell, 591 So.2d 444, 449-50, n. 3 (Ala.1991). There is no set method for considering a motion requesting such treatment. Edwards v. State, 294 Ala. 358, 317 So.2d 512 (1975). However, the Youthful Offender Act, § 15-19-1, Ala.Code 1975, requires that the court conduct a factual investigation into the defendant’s background. Ware v. State, 432 So.2d 555 (Ala.Crim.App.1983). Generally, the trial court considers the nature of the crime charged, any prior convictions, the defendant’s age, and any other matters deemed relevant by the court. Clemmons v. State, 294 Ala. 746, 321 So.2d 238 (1975). Moreover, the trial court need not articulate on the record its reasons for denying the defendant youthful offender status. Garrett v. State, 440 So.2d 1151, 1152-53 (Ala.Crim.App.1983), cert. denied (Ala.1983). Accord, Goolsby v. State, 492 So.2d 635 (Ala.Crim.App.1986).’
“Reese v. State, 677 So.2d 1239, 1240 (Ala.Crim.App.1995).”
“When deciding whether to grant youthful offender status, it is expected that the nature of the crime charged, along with prior convictions of the defendant, will be considered, as well as any other matters deemed relevant by the court.” Goolsby v. State, 492 So.2d 635, 636 (Ala.Crim.App.1986). “The Youthful Offender Act vests in the trial judge almost absolute discretion to grant or deny youthful offender status after making an appropriate investigation.” Morgan v. State, 363 So.2d 1013, 1015 (Ala.Crim.App.1978). There is no indication that the circuit court abused that discretion in this case.
II.
Flowers next argues that under Rule 11.6, Ala.R.Crim.P., the circuit court erred in not holding a competency hearing after receiving the report of his mental evaluation from Dr. Robert DeFrancisco.
At arraignment Flowers entered a plea of not guilty by reason of mental disease or defect, and he requested that he be permitted to undergo a mental evaluation. The circuit court granted the motion, and Flowers was sent to Taylor Hardin Secure Medical Facility, where he was evaluated by a clinical forensic psychologist — Dr. DeFrancisco. The report completed by Dr. DeFrancisco was filed in the circuit court. The report indicated that Flowers was not mentally incompetent to stand trial and that Dr. DeFrancisco did not believe that Flowers was mentally incompetent at the time of the murder. It was DeFraneisco’s opinion that Flowers had no major mental disorder.
Based on those findings the circuit court did not order a competency hearing. Rule 11.6(a), Ala.R.Crim.P., states, in part:
“After the examinations have been completed and the reports have been submitted to the court, the judge shall review the reports of the psychologists or psychiatrists and, if reasonable grounds exist to doubt the defendant’s mental competency, the judge shall set a hearing not more than forty-two (42) days after the date the judge received the report....”
This Court in Tankersley v. State, 724 So.2d 557 (Ala.Crim.App.1998), held that Rule 11.6, Ala.R.Crim.P., does not automatically require a competency hearing. We stated:
“According to the appellant, he had a right pursuant to Rule 11.6(a), Ala. *946 R.Crim.P., to a competency hearing within 42 days of the receipt of the report of his mental examination.... However, Rule 11.6(a) does not automatically require a competency hearing following the mental examination. Only when the judge finds after a review of the reports that ‘reasonable grounds exist to doubt the defendant’s mental competency’ is the judge required to set a competency hearing and that hearing-must be held not more than 42 days after the judge receives the report. There is no indication that the trial judge in this case ever found reasonable grounds to doubt the defendant’s mental competency. Therefore, the trial judge did not deviate from the procedure outlined in Rule 11.6(a).”
724 So.2d at 565. As we also stated in Daniels v. State, 621 So.2d 335 (Ala.Crim.App.1992):
“Section 15-16-21, Code of Alabama 1975, states:
“If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity....’
“(Emphasis added.)
“This section places the initial burden on the trial court to determine whether there are ‘reasonable grounds’ to doubt the accused’s sanity. ‘The trial court is, thus, the “screening agent” for mental examination requests.’ Reese v. State, 549 So.2d 148, 150 (Ala.Cr.App.1989). ‘ “It is left to the discretion of the trial court as to whether there is a reasonable or bona fide doubt as to sanity, and, thus, whether a further examination is required.” ’ 549 So.2d at 150. The trial court makes a preliminary determination ‘without the aid of a jury as to whether reasonable grounds existed to doubt the defendant’s competency.’ Rule 11.3, A.R.Crim.P., Committee Comments.”
621 So.2d at 337. After reviewing the competency report, the circuit court had no reasonable grounds to question Flowers’s competency. Therefore, no hearing was necessary or required by Rule 11.6(a), Ala.R.Crim.P. The circuit court committed no error here.
III.
Flowers argues that the circuit court erred in denying his motion to suppress his confession and other statements he made to the police because, he argues, those statements were obtained through ploys of and manipulation by law enforcement personnel.
Flowers moved that his confession be suppressed, and a hearing was held on the motion. Dean McGowan of the Baldwin County Sheriffs Department testified that Flowers voluntarily came to the Escambia County courthouse on November 29, 2000, that he read Flowers his Miranda[3] rights, and that Flowers signed a waiver-of-rights form and indicated that he understood his rights and that he was waiving them. He testified that Flowers did not appear to be intoxicated or on drugs when he waived his rights. McGowan terminated the interview when he suspected that Flowers was being untruthful. Approximately five minutes later Lieutenant Chuck McMullen of the Escambia County Sheriffs Department asked to speak with Flowers because he was acquainted with him. McMullen testified that when he entered the room to speak with Flowers he told him:
*947 “Did he remember being given his Miranda rights by the Baldwin County investigators, and he didn’t have to talk to me if he didn’t want to. I told him that any time, while he was talking with us, he could stop the interview and ask for a lawyer to be present. And he said that he remembered all of that.”
(R. 67.) McMullen said that Flowers did not appear to be under the influence of alcohol or drugs, that Flowers was able to communicate with him, that he did not make any threats or promises in order to obtain a statement from Flowers, that he did not tell him it would be better or worse if he did not speak to him, and that he did not coerce Flowers in any way in order to secure a statement. McMullen further testified that Flowers confessed and agreed to lead police to the body. He said that it was a long drive to where the body was located and that during the drive Flowers talked about the crime and what the five codefendants had done to Philyaw. As they got closer to the body Flowers told police, “There is where the massacre began.” Flowers also led police to where he had disposed of the shotgun used to kill Philyaw.
Flowers testified at the suppression hearing. He said that on the day of the murder he took about 15 or 20 Zoloft tablets, some crystal methamphetamine, and drank about 12 beers. He said that McMullen told him that if he told police where the body was located he would not seek the death penalty and that that was the only reason he cooperated with the police and confessed.
After hearing all the testimony the circuit court denied Flowers’s motion to suppress his confession. The Alabama Supreme Court in McLeod v. State, 718 So.2d 727 (Ala.1998), articulated the standard for determining whether an accused’s statement to police was correctly received into evidence. The Supreme Court stated:
“It has long been held that a confession, or any inculpatory statement, is involuntary if it is either coerced through force or induced through an express or implied promise of leniency. Bram v. United States, 168 U.S. 532, 18 S.Ct. 188, 42 L.Ed. 568 (1897). In Culombe [v. Connecticut ], 367 U.S. [568] at 602, 81 S.Ct. [1860] at 1879 [(1961)], the Supreme Court of the United States explained that for a confession to be voluntary, the defendant must have the capacity to exercise his own free will in choosing to confess. If his capacity has been impaired, that is, ‘if his will has been overborne’ by coercion or inducement, then the confession is involuntary and cannot be admitted into evidence. Id. (emphasis added [in McLeod ]).
“The Supreme Court has stated that when a court is determining whether a confession was given voluntarily it must consider the ‘totality of the circumstances.’ Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 1139-40, 22 L.Ed.2d 433 (1969); Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968); see Beecher v. Alabama, 389 U.S. 35, 38, 88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). Alabama courts have also held that a court must consider the totality of the circumstances to determine if the defendant’s will was overborne by coercion or inducement. See Ex parte Matthews, 601 So.2d 52, 54 (Ala.) (stating that a court must analyze a confession by looking at the totality of the circumstances), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992); Jackson v. State, 562 So.2d 1373, 1380 (Ala.Crim.App.1990) (stating that, to admit a confession, a court must determine that the defendant’s will was not overborne by pressures and circumstances swirling *948 around him); Eakes v. State, 387 So.2d 855, 859 (Ala.Crim.App.1978) (stating that the true test to be employed is ‘whether the defendant’s will was overborne at the time he confessed’) (emphasis added [in McLeod ]). Thus, to determine whether McLeod’s confession was improperly induced, we must determine if his will was ‘overborne’ by an implied promise of leniency.”
718 So.2d at 729 (footnote omitted).
Here, conflicting evidence was presented at the suppression hearing. Two officers testified that Flowers did not appear to be under the influence of alcohol or drugs when he gave police his statement. Flowers testified that he had taken 15 or 20 Zoloft tablets, had drunk about 12 beers, and had taken crystal methamphetamine on the day of the murder. The officers testified that they did not offer Flowers any reward or make any promises to him to secure his confession. Flowers testified that McMullen told him that the State would not seek the death penalty if he confessed and led police to where he had disposed of the body. The circuit court was faced with making a credibility choice between the officers and Flowers. The circuit court resolved the conflict against Flowers. As we stated in Robinson v. State, 865 So.2d 457 (Ala.Crim.App.2003):
“We recognize that ‘[a] direct and substantial promise to drop other cases against the defendant is sufficient to require exclusion of a confession obtained by that promise.’ Rutledge v. State, 651 So.2d 1141, 1144 (Ala.Crim.App.1994). However, ‘[wjhere the trial court finds on conflicting evidence that a confession was voluntarily made, such finding will not be disturbed on appeal unless it appears contrary to the great weight of evidence or is manifestly wrong.’ Burks v. State, 353 So.2d 539, 542 (Ala.Crim.App.1977).
“ ‘ “[C]onflicting evidence given at [a] suppression hearing presents a credibility choice for the trial court.” Atwell v. State, 594 So.2d 202, 212 (Ala.Cr.App.1991), cert. denied, 594 So.2d 214 (Ala.1992). “[A] trial court’s ruling based upon conflicting evidence given at a suppression hearing is binding on this Court, and is not to be reversed absent a clear abuse of discretion.” Jackson v. State, 589 So.2d 781, 784 (Ala.Cr.App.1991) (citations omitted).’
“Rutledge, 651 So.2d at 1144-45.
“ ‘Although a promise of leniency or reward undermines the voluntariness of a confession, see Holmes v. State, 598 So.2d 24 (Ala.Cr.App.1992); Campbell v. State, 574 So.2d 937 (Ala.Cr.App.1990), when the evidence regarding whether a promise was made is in conflict, the trial court must make a credibility determination. “Absent clear error, the [circuit] court’s credibility choices at suppression hearings are binding on this court.” Walker v. State, 551 So.2d 449, 451 (Ala.Cr.App.1989). The standard on review of conflicting evidence at a motion to suppress a confession is whether the trial court’s finding was “manifestly contrary to the great weight of the evidence.” Ex parte Matthews, 601 So.2d 52 (Ala.1992), cert. denied, [505] U.S. [1206], 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992). See also Ex parte Singleton, 465 So.2d 443, 445 (Ala.1985) (whether the finding was “palpably contrary to the weight of the evidence”).’
“Thompson v. State, 611 So.2d 476, 478 (Ala.Crim.App.1992).”
865 So.2d at 468-69. After reviewing the record of the suppression hearing we can *949 not say that the circuit court’s ruling was manifestly contrary to the great weight of the evidence.
IV.
Flowers argues that the circuit court erred in denying his motion to exclude the out-of-court statements of his coconspira-tors.
The record shows that Flowers filed a motion in limine seeking to prohibit the State from using or referring to statements of his codefendants. After hearing arguments at the motion hearing, the circuit court stated: “All right. I deny the Motion in Limine. But if the State can give notice to the court and to the defense that they are planning on introducing some codefendant statement, so we can take care of that prior to it coming out in the middle of the trial.” (R. 151.) We note that none of Flowers’s codefendants testified at Flowers’s trial, nor were any of the recorded statements made by the codefen-dants introduced at Flowers’s trial.
Flowers identifies in his brief only the alleged hearsay statements that were admitted during Ruby Welch’s testimony. Flowers does not identify what portion of Welch’s testimony he alleges is hearsay. However, during Welch’s testimony the prosecutor questioned Welch as to why she telephoned police to report that Philyaw was missing and what she told the police officers when she spoke to them. The following occurred during Welch’s testimony:
“Q [Prosecutor]: What did you see?
“A [Ruby Welch]: Mr. Philyaw’s cap lying in that blood.
“Q: Did you tell that to the deputy?
“A: Yes, sir, I did.
“Q: Do you know a person by the name
of Brenda Owens?
“A: Yes, sir. My daughter.
“Q: Did you receive any information from her that—
“[Defense attorney]: And we object to the hearsay.
“The Court: Overrule the objection.
“Q: Did you receive any information from her concerning what may have happened to Tommy? Yes or no. I’m not asking you what the information was; just yes or no.
“A: Yes.
“Q: Okay. Did you relay that information to law enforcement?
“A: Yes.
“Q: What did you say to law enforcement?
“[Defense attorney]: And, Judge, I object. That’s information based on hearsay, if they can’t satisfy the exception.
“The Court: Overrule the objection.
“Q: Did you report something to law enforcement?
“A: Yes.
“Q: Concerning the information that you received?
“A: Yes, sir, I did.
“Q: You don’t know if it’s true or not, do you?
“A: No, sir, I don’t.
“Q: What did you report to law enforcement?
“A: That she told me that they were supposed to go down there and rob Tommy.
“Q: And ‘they’ would be who?
“A: (Pause)
“Q: Did you report to law enforcement who ‘they’ was?
“A: Yes.
“Q: What did you report?
“A: John Earl Morrow, Timothy Flowers, Libby — I didn’t know her *950 name — Angela Morrow, and the black fellow — I didn’t know his name.”
(R. 551-53)(emphasis added).
The State contends that the above-cited statement elicited from Welch was not hearsay because it was not offered to prove the truth of the matter asserted.
“It is clear that the hearsay rule applies only to a statement offered for the truth of its contents. Tillis v. State, 469 So.2d 1367, 1370 (Ala.Cr.App.1985); Dent v. State, 423 So.2d 327 (Ala.Cr.App.1982); Epps v. State, 408 So.2d 562, 564 (Ala.Cr.App.1981); Crews v. State, 375 So.2d 1291 (Ala.Cr.App., 1979); Meriwether v. Crown Investment Corp., 289 Ala. 504, 268 So.2d 780 (1972). A statement offered for some purpose other than to prove the truth of its factual assertions is not hearsay. Bryant v. Moss, 295 Ala. 339, 342, 329 So.2d 538 (1976). See also Cory v. State, 372 So.2d 394 (Ala.Cr.App.1979); Epps v. State, 408 So.2d 562, 564 (Ala.Cr.App.1981). Thus, ‘utterances offered for some purpose other than to prove the truth of the out of court declaration fall outside the rule.’ Ex parte Bryars, 456 So.2d 1136, 1138 (Ala.1984). Where the statement’s value does not depend upon its truth, its admission would not violate the hearsay rule. See E. Cleary, McCormick’s Handbook on the Law of Evidence (2d ed.1972), § 249, at page 590. Thus, a statement may be admissible where it is not offered to prove the truth of whatever facts might be stated, ‘but rather to establish the reason for action or conduct by the witness.’ Tucker v. State, 474 So.2d 131, 132 (Ala.Cr.App.1984), rev’d on other grounds, 474 So.2d 134 (Ala.1985). See also Tillis v. State, supra.”
Edwards v. State, 502 So.2d 846, 848-49 (Ala.Crim.App.1986). We agree with the State. It is clear that this evidence was not offered to prove the truth of the matter asserted. Welch indicated during her testimony that she did not know if the information Owens told her was accurate.
Moreover, Owens presented this same evidence during her testimony. We have held that
“ ‘ “testimony that may be inadmissible may be rendered harmless by prior or subsequent lawful testimony to the same effect or from which the same facts can be inferred.” ’ Jackson v. State, 791 So.2d 979, 1013 (Ala.Crim.App.), cert. denied, 791 So.2d 1043 (Ala.2000), cert. denied, 532 U.S. 934, 121 S.Ct. 1387, 149 L.Ed.2d 311 (2001), quoting White v. State, 650 So.2d 538, 541 (Ala.Crim.App.1994), overruled on other grounds, Ex parte Rivers, 669 So.2d 239 (Ala.Crim.App.1995). See also Dawson v. State, 675 So.2d 897, 900 (Ala.Crim.App.1995), aff'd, 675 So.2d 905 (Ala.1996) (‘The erroneous admission of evidence that is merely cumulative is harmless error.’); and Thompson v. State, 527 So.2d 777, 780 (Ala.Crim.App.1988) (‘Testimony which may be apparently illegal upon admission may be rendered prejudicially innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred.’).”
McNabb v. State, 887 So.2d 929, 971 (Ala.Crim.App.2001), aff'd, 887 So.2d 998 (Ala.2004). There was no reversible error in the admission of the above-cited testimony during Welch’s direct examination.
V.
Flowers argues that the circuit court erred in denying his motion for a mistrial after it was discovered that Flowers had told one of the police officers that all of the people involved in the murder had shot Philyaw. Flowers argues that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by *951 failing to disclose this information to him before trial.
The record shows that in the middle of the trial the State informed the circuit court that Officer Chuck Brooks had just told the prosecutor’s investigator that when Flowers led police to the body he overheard Flowers say that all of the participants in the robbery had shot Philyaw. The prosecutor stated that he was not aware that Flowers had made this statement until that moment because the officer the State had intended to call to testify had had an emergency appendectomy and Officer Brooks had taken that officer’s place. Brooks had never filed a report on the incident. The circuit court stated:
“I will tell you at this point, the State will not be able to use the statement that Detective Brooks just informed us of, that everybody took a shot, or whatever the statement was, everybody took a shot at the victim. I’m not going to let the State use that statement in this case. If the defense wants to use it, that’s up to the defense, however the defense wants to handle that part. But the State cannot introduce that statement.”
(R. 818.) Flowers then moved for a mistrial, arguing that “the State’s failure to provide [Flowers] with the evidence, timely, is substantial and detrimental to our case, and that under the law of Alabama, this is grounds for a mistrial.” (R. 820.) The State argued that this evidence did not violate Brady because it did not exculpate Flowers. The circuit court denied the motion for a mistrial.
Flowers argues in his brief that merely prohibiting the State from introducing the evidence “did nothing to balance [Flowers’s] presumption of innocence with the clearly exculpatory evidence that all of the co-defendant’s may have shot the victim.” (Flowers’s brief at page 48.) He further argues that this evidence might have affected his defense but he does not state in what manner it might have affected the defense.
To prove a Brady violation Flowers must show (1) that the State suppressed evidence; (2) that the evidence suppressed was exculpatory or favorable to him; and (3) that the evidence suppressed was material to the issues at trial. The information that Flowers alleges was suppressed was information within Flowers’s own knowledge — a statement he had made to police. As this Court stated in Adams v. State, [Ms. CR-98-0496, August 29, 2003] — So.2d -, - (Ala.Crim.App.2003), rejecting a similar argument:
“This Court in Waldrop [v. State, 859 So.2d 1138 (Ala.Crim.App.2000),] considered whether the State’s failure to disclose to the defense a statement that Waldrop made that he was in Georgia at the time of the murders constituted a Brady violation. The trial court denied the motion for a mistrial, stating that defense counsel could have conferred with Waldrop about the statement. This Court stated:
“‘In Freeman v. State, 722 So.2d 806 (Ala.Crim.App.1998), this Court addressed the discovery of a defendant’s statements to the police, wherein we stated:
“ ‘ “To prove a Brady violation, a defendant must show that ‘ “(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; (3) the evidence was material to the issues at trial.” ’ Johnson v. State, 612 So.2d 1288, 1293 (Ala.Cr.App.1992), quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir.1990), cert. denied, Stano v. Singletary, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). See Smith v. State, 675 So.2d 100 (Ala.Cr.App.1995). “‘The evidence *952 is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” ’ Johnson, 612 So.2d at 1293, quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).
[[Image here]]
As for the appellant’s statement to the police, the appellant’s counsel could have discovered from the appellant himself the fact that the appellant had given a statement. Thus, the appellant could have obtained all of the evidence in question by exercising due diligence. ‘There is no Brady violation where the information in question could have been obtained by the defense through its own efforts.’ Johnson, 612 So.2d at 1294; see also Jackson v. State, 674 So.2d 1318 (Ala.Cr.App.1993), aff'd in part and rev’d in part on other grounds, 674 So.2d 1365 (Ala.1995). ‘ “Evidence is not ‘suppressed’ if the defendant either knew ... or should have known ... of the essential facts permitting him to take advantage of any exculpatory evidence.” United States v. LeRoy, 687 F.2d 610, 618 (2d Cir.1982)[, cert. denied, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983)].’ Carr v. State, 505 So.2d 1294, 1297 (Ala.Cr.App.1987) (noting, ‘The statement the appellant contends was suppressed in this case was his own, and no reason was set forth to explain why he should not have been aware of it.’) Where there is no suppression of evidence, there is no Brady violation. Carr, 505 So.2d at 1297.”
“ ‘722 So.2d at 810-11.’ ”
Moreover, we fail to see how this information would have been exculpatory. Exculpatory evidence is defined in Black’s Law Dictionai"y 597 (8th ed.2004), as “Evidence tending to establish a criminal defendant’s innocence.” This evidence did not exonerate Flowers from any wrongdoing; indeed, it was an admission that he participated in the murder with his code-fendants. In Alabama no distinction is made between principals and accessories to a criminal act. See § 13A-2-23, Ala. Code 1975.
Neither can we envision how this evidence would have changed the defense’s theory of the case given that the strongest and most logical defense was the defense presented — that Flowers had been drinking and taking drugs on the day of the murder and as a result could not form the requisite intent. We have said that “ ‘ “The grant or denial of a mistrial is a matter within the sound discretion of the trial court and will only be disturbed upon a showing of manifest abuse.” ’ ” Gamble v. State, 791 So.2d 409, 431 (Ala.Crim.App.2000), quoting Whitt v. State, 733 So.2d 463, 481 (Ala.Crim.App.1998), quoting in turn Huffman v. State, 706 So.2d 808, 809 (Ala.Crim.App.1997). Flowers has made no showing that the circuit court manifestly abused its discretion in denying the motion for a mistrial based on an alleged Brady violation.
VI.
Flowers argues that the circuit court erred in allowing photographs of the victim’s badly burned body to be received into evidence because, he argues, the photographs were cumulative, prejudicial, and served to inflame the passions of the jury.
The photographs that Flowers challenges on appeal were photographs of the *953 badly burned head of the victim. This Court has on numerous occasions upheld the admission of photographs that show the external injuries suffered by a victim regardless of whether those photographs are cumulative, gruesome, or gory. See White v. State, 900 So.2d 1249 (Ala.Crim.App.2004); Yeomans v. State, 898 So.2d 878 (Ala.Crim.App.2004); Moody v. State, 888 So.2d 532 (Ala.Crim.App.2003); Centobie v. State, 861 So.2d 1111 (Ala.Crim.App.2001); Hodges v. State, 856 So.2d 875 (Ala.Crim.App.2001); Davis v. State, 804 So.2d 1153 (Ala.Crim.App.2000); Smith v. State, 797 So.2d 503 (Ala.Crim.App.2000); Ferguson v. State, 814 So.2d 925 (Ala.Crim.App.2000); Smith v. State, 795 So.2d 788 (Ala.Crim.App.2000); Maxwell v. State, 828 So.2d 347 (Ala.Crim.App.2000); Johnson v. State, 820 So.2d 842 (Ala.Crim.App.2000); James v. State, 788 So.2d 185 (Ala.Crim.App.2000); Acklin v. State, 790 So.2d 975 (Ala.Crim.App.2000); Ward v. State, 814 So.2d 899 (Ala.Crim.App.2000); Duncan v. State, 827 So.2d 838 (Ala.Crim.App.1999); Ingram v. State, 779 So.2d 1225 (Ala.Crim.App.1999); Samra v. State, 771 So.2d 1108 (Ala.Crim.App.1999); Mack v. State, 736 So.2d 664 (Ala.Crim.App.1998); Price v. State, 725 So.2d 1003 (Ala.Crim.App.1997); Howard v. State, 678 So.2d 302 (Ala.Crim.App.1996); Perry v. State, 647 So.2d 71 (Ala.Crim.App.1994); Sockwell v. State, 675 So.2d 4 (Ala.Crim.App.1993); Green v. State, 591 So.2d 576 (Ala.Crim.App.1991); Holder v. State, 584 So.2d 872 (Ala.Crim.App.1991); Lee v. State, 562 So.2d 657 (Ala.Crim.App.1989). We see no reason to depart from long-established precedent. The circuit court correctly allowed photographs of the victim’s body to be received into evidence.
VII.
Flowers argues that the circuit court erred in failing to instruct the jury on certain lesser-included offenses and that the circuit court gave several erroneous jury instructions. We note that
“[w]hen reviewing a trial court’s jury instructions, we must view them as a whole, not in bits and pieces, and as a reasonable juror would have interpreted them. Ingram v. State, 779 So.2d 1225 (Ala.Cr.App.1999). ‘The absence of an objection in a case involving the death penalty does not preclude review of the issue; however, the defendant’s failure to object does weigh against his claim of prejudice.’ Ex parte Boyd, 715 So.2d 852 (Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998).”
Johnson v. State, 820 So.2d 842, 874 (Ala.Crim.App.2000).
A.
Flowers first argues that the circuit court erred in failing to instruct the jury on the lesser-included offense of manslaughter. Flowers’s argument, however, is not supported by the record. As the State correctly notes in its brief, the circuit court did instruct the jury on manslaughter. (R. 1227-28, 1243, 1248-49, 1253, 1263-64, 1269.) The jury instructions show that the circuit court defined manslaughter and informed the jury that it was a lesser-included offense the jury could consider when determining Flowers’s guilt. Flowers’s argument is disputed by the record and is therefore without merit.
B.
Flowers argues that the circuit court’s jury instructions on intoxication were flawed because, he argues, the court instructed the jury that Flowers had to “be so drunk that he [didn’t] know what he [was] doing.” (Flowers’s brief at page 58.)
The circuit court gave the following instructions on intoxication:
*954 “Intoxication. That has been injected as a defense. It’s up to you to determine whether or not the defendant was intoxicated at all, or whether he was highly intoxicated.
“But in order for intoxication to reduce what would otherwise he a capital offense, or a capital murder, or intentional murder, or any intentional crime to a lesser offense, he’s got to be so drunk that, in effect, he doesn’t know what he’s doing. So drunk that he cannot form an intent. So drunk that he specifically can’t form an intent to kill, or an intent to rob, or an intent to kidnap, or any other intents that I may have charged you.
“Voluntary intoxication caused by substances that the actor knowingly introduced into his body, the tendency of which to cause intoxication which he knows or ought to know.
“Intoxication includes a disturbances of mental or physical capabilities resulting from the introduction of any substance into the body.
“While voluntary intoxication is never a defense to a criminal charge, it may negate the specific intent essential to intentional killing, and reduce it to a lesser charge, or may negate the intent that he had to perform one of the other charges, such as the intent to rob, or the intent to kidnap, and others that I have charged you on.
“Now, in determining whether a person is intoxicated, you have to look at all of the circumstantial evidence: What did a person do at that point in time: What were they capable of doing? Were they capable of forming an intent to do other things and carry out those purposes? You look at the entirety of the circumstances surrounding the event in question, and make your determination from the entirety of the circumstances as to whether the person was so devoid of judgment because of alcohol or other substances that they couldn’t form an intent.
“If you find from the evidence that the defendant was sufficiently intoxicated that he could not form specific intent, an essential element of both capital murder and intentional murder, you cannot find the defendant guilty of either capital murder or intentional murder, and you would not be able to find him guilty of felony murder, because the intent— there is an intent there to commit the crime of robbery or to commit the crime of kidnapping in the first degree. However, manslaughter does not require a specific intent.”
(R. 1274-75)(emphasis added).
At the conclusion of the instructions Flowers objected and stated:
“[W]e would object to the court’s charge on intoxication. Specifically, we object to the — not to the charge that the court gave on intoxication, but to the comments that the court made prior to the charge on intoxication. We believe that some of the explanation could have led the jurors to believe that — we don’t believe the explanation was completely accurate, and we would object to some of that.”
(R. 1279.)
This Court in Williams v. State, 710 So.2d 1276, 1332 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997), affirming a conviction in which a jury instruction on intoxication had equated the degree of intoxication necessary to negate intent to insanity, stated:
“ ‘Bankhead contends that the court’s instruction requiring that the jury, in order to find a drunkenness defense applicable, had to find Bankhead insane due to intoxication, was prejudicial. We *955 disagree. In an assault and battery-case, voluntary intoxication is no defense, unless the degree of intoxication amounts to insanity and renders the accused incapable of forming an intent to injure. Lister v. State, 437 So.2d 622 (Ala.Cr.App.1983). The same standard is applicable in homicide cases. Crosslin [v. State, 446 So.2d 675 (Ala.Cr.App.1983), appeal after remand, 489 So.2d 680 (Ala.Cr.App.1986) ]. Although intoxication in itself does not constitute a mental disease or defect within the meaning of § 13A-3-1, Code of Alabama 1975, intoxication does include a disturbance of mental or physical capacities resulting from the introducing of any substance into the body. § 13A-3-2. The degree of intoxication required to establish that a defendant was incapable of forming an intent to kill is a degree so extreme as to render it impossible for the defendant to form the intent to kill. A jury is capable of determining whether a defendant’s intoxication rendered it impossible for the defendant to form a particular mental state.’ ”
(Quoting Ex parte Bankhead, 585 So.2d 112, 121 (Ala.1991).) See also McGowan v. State, [Ms. CR-95-1775, December 12, 2003] — So.2d - (Ala.Crim.App.2003); Williams v. State, 795 So.2d 753 (Ala.Crim.App.1999); Minor v. State, 780 So.2d 707 (Ala.Crim.App.1999), rev’d on other grounds, 780 So.2d 796 (Ala.2000).
Here, the jury instructions on intoxication were thorough, accurate, and not misleading. “[A] trial court has broad discretion in fashioning a jury instruction, provided it accurately reflects the law and facts of the case.” Raper v. State, 584 So.2d 544, 545 (Ala.Crim.App.1991). The circuit court’s instructions on intoxication were not erroneous.
C.
Flowers argues that the circuit court erred in refusing to instruct the jury on mental disease or defect. In a one-page argument in his brief, Flowers contends that the circuit court erred in refusing to instruct the jury on his defense that he was not guilty by reason of mental disease or defect.
When determining whether a circuit court has erred in failing to instruct a jury on the defense of mental disease or defect we apply the standard discussed by this Court in Young v. State, 428 So.2d 155 (Ala.Crim.App.1982):
“The question of whether there is any evidence to substantiate a plea of insanity is a question of law for the court. Knight v. State, 273 Ala. 480, 489, 142 So.2d 899 (1962); McKinnon v. State, 405 So.2d 78, 80 (Ala.Cr.App.1981). Where there is no evidence to establish the plea of insanity, the trial judge may instruct the jury that there is no evidence which would justify a finding of not guilty by reason of insanity and remove that issue from their consideration. Griffin v. State, 284 Ala. 472, 475, 225 So.2d 875 (1969); Walker v. State, 269 Ala. 555, 114 So.2d 402 (1959). ‘The trial court should not submit the issue of insanity to the jury unless there is evidence to sustain the plea.’ Darrington v. State, 389 So.2d 189, 190 (Ala.Cr.App.1980). Requested charges submitting the defense of insanity to the jury are properly refused where there is no evidence tending to show that the accused was insane. Snead v. State, 251 Ala. 624, 628, 38 So.2d 576 (1949); Pilley v. State, 247 Ala. 523, 528, 25 So.2d 57 (1946); Johnson v. State, 247 Ala. 271, 275, 24 So.2d 17 (194[5]); Johnson v. State, 169 Ala. 10, 12, 53 So. 769 (1910); Connell v. State, 56 Ala.App. 43, 51-52, 318 So.2d 782, reversed on other *956 grounds, 294 Ala. 477, 318 So.2d 710 (1974); Smith v. State, 32 Ala.App. 209, 211, 23 So.2d 615, cert. denied, 247 Ala. 225, 23 So.2d 617 (1945).
“In determining whether there was sufficient evidence of insanity to warrant the submission of that issue to the jury the trial judge must decide if there was any evidence of legal insanity. That is, was there any evidence that the defendant, at the time of the crime, lacked the substantial capacity as a result of mental disease or defect to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Alabama Code 1975, Section 13A-3-l.[4]”
Young, 428 So.2d at 160.
At trial, Flowers presented the testimony of Dr. John R. Goff — a psychologist. Dr. Goff testified that it was his opinion that Flowers suffered from mood swings, a disorder he stated was clinically known as “cyclothymic disorder.” He also stated that he believed that Flowers appreciated the criminality of his conduct but that it was his opinion that Flowers’s condition would affect whether Flowers intended to kill Philyaw.
When Flowers requested a jury instruction on mental disease or defect the circuit court denied the request, stating that no evidence had been presented that rose to the level needed to show legal insanity. Based on Dr. Goffs testimony, we agree with the circuit court. There was no evidence presented that tended to show that Flowers was legally insane at the time of the murder. Therefore, Flowers’s request for a jury instruction on mental disease or defect was correctly denied. See Young.
D.
Flowers argues that the circuit court’s instructions on duress were erroneous because, he contends, the instructions failed to inform the jury that the defense of duress was available on his conspiracy charges and on any lesser-included offenses that the jury might consider.
Flowers requested and was granted a jury instruction on duress. At the charge conference the circuit court stated that it would use the pattern jury instruction on duress but that it would inform the jury that the duress defense was not available for the crimes of capital murder and murder. After the circuit court gave the jury instructions, Flowers objected, stating that the circuit court’s instructions on duress were prejudicial because the jury was not instructed that it could consider the defense of duress in determining Flowers’s guilt for charges other than those of capital murder and murder. (R. 1279.) The circuit court prefaced his instruction on duress by stating, “The offense of duress is unavailable in a prosecution for capital murder or murder.”
Duress is defined in § 13A-3-30, Ala. Code 1975, as follows:
“(a) It is a defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by the threat of imminent death or serious physical injury to himself or another.
“(b) The defense provided by this section is unavailable if the actor intentionally or recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices *957 to establish culpability for the offense charged.
[[Image here]]
“(d) The defense provided by this section is unavailable in a prosecution for:
“(1) murder; or
“(2) any killing of another under aggravated circumstances, as provided by Article 2 of Chapter 5 of this title.”
As stated above, Flowers argues that the circuit court should have instructed the jury that the defense of duress was available for the conspiracy charges and for the lesser-included offenses to capital murder. However, Flowers was acquitted of the conspiracy charges when the jury returned a not-guilty verdict on those counts of the indictment. “ ‘The charge upon which the conviction rests is the only charge that is subject to appellate review.’ ” Allen v. State, 683 So.2d 38 (Ala.Crim.App.1996), quoting McCain v. State, 611 So.2d 1123, 1124 (Ala.Crim.App.1992).
Moreover, a duress instruction was not available for any of the lesser-included offenses to the capital crimes charged. As we stated in Boyd v. State, 715 So.2d 825, 837 (Ala.Crim.App.1997), aff'd, 715 So.2d 852 (Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998):
“[P]ursuant to § 13A-3-30(d)(2), Code of Alabama 1975, the defense of duress is inapplicable to a charge of capital murder and therefore could not support a lesser included offense instruction in a capital murder case where such an instruction would be based on that theory.”
Furthermore, our review of the record revealed no evidence indicating that Flowers was under duress at the time of the murders. Alabama has held that a duress defense is not available if there is no evidence indicating that the defendant “surrendered himself to the proper authorities after attaining a position of safety with reference to the threatened harm.” Mayes v. State, 453 So.2d 767, 769 (Ala.Crim.App.1984). (For a discussion of this defense see United States v. Bailey, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).)
VIII.
Flowers next argues that the circuit court committed plain error by accepting the jury’s verdicts for two counts of capital murder. Specifically, he argues that his constitutional protection against double jeopardy was violated because he was convicted twice of killing Philyaw.
Flowers was convicted of two counts of capital murder — one count for killing Phi-lyaw during the course of a robbery and one count for killing Philyaw during the course of a kidnapping. The Alabama Supreme Court has held that convictions on more than one count of capital murder for killing one victim do not violate the Double Jeopardy Clause. See Ex parte McWilliams, 640 So.2d 1015 (Ala.1993). The Supreme Court in McWilliams stated:
“In this case, McWilliams was not prosecuted for the same offense after an acquittal; nor was he prosecuted for the same offense after a conviction. That is, he was not prosecuted twice for the same offense. Moreover, while in King [v. State, 574 So.2d 921 (Ala.Crim.App.1990),] the defendant received four separate prison sentences for the same offense, McWilliams has only been sentenced to die once and, indeed, can only be put to death once.
[[Image here]]
“In the present case, it is clear that the jury knew that it was convicting McWilliams of murdering Patricia Reynolds only once. It is also clear that the jury knew that McWilliams’s crime was *958 made capital because his victim was murdered in the course of one robbery and one rape. We conclude, therefore, that the sentencing court has not prescribed a greater punishment than the legislature intended. Even if McWil-liams’s rights against double jeopardy had been violated by the two convictions of robbery-murder, the convictions for one count of rape-murder would remain; and either of these would be sufficient to support a death sentence.”
640 So.2d at 1022 (footnote omitted). Citing McWilliams, this Court has upheld numerous capital-murder convictions against similar double-jeopardy attacks. See Adams v. State, [Ms. CR-98-0496, August 29, 2003] — So.2d - (Ala.Crim.App.2003); Taylor v. State, 808 So.2d 1148 (Ala.Crim.App.2000); Powell v. State, 796 So.2d 404 (Ala.Crim.App.1999); Whitehead v. State, 777 So.2d 781 (Ala.Crim.App. 1999); Freeman v. State, 776 So.2d 160 (Ala.Crim.App.1999); Boyd v. State, 746 So.2d 364 (Ala.Crim.App.1999); Burtram v. State, 733 So.2d 921 (Ala.Crim.App.1998); Hyde v. State, 778 So.2d 199 (Ala.Crim.App.1998); Mitchell v. State, 706 So.2d 787 (Ala.Crim.App.1997); Grayson v. State, 675 So.2d 516 (Ala.Crim.App.1995); Hunt v. State, 659 So.2d 933 (Ala.Crim.App.1994). There was no double-jeopardy violation when the jury returned guilty verdicts against Flowers on two counts of capital murder for killing one victim — Philyaw.

Penalty-Phase Issues

IX.
Flowers argues that the death penalty in Alabama is unconstitutional under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. The specific issue Flowers raises on appeal was not first presented to the circuit court. At trial Flowers argued that electrocution as a means of execution was cruel and unusual punishment. Therefore, we review this issue for plain error. See Rule 45A, Ala. RApp.P.
This Court has upheld the death penalty against similar constitutional attacks. As we stated in Clark v. State, 896 So.2d 584, 597 (Ala.Crim.App.2003)(opinion on return to remand and on application for rehearing):
“[B]oth the death penalty in general and Alabama’s capital-murder statute in particular have been upheld against a variety of constitutional attacks. See Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995)(holding that Alabama’s capital statute does not violate the Eighth Amendment); Gregg v. Georgia, 428 U.S. 153, 169, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)(plurality opinion)(holding that ‘the punishment of death does not invariably violate the Constitution’); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)(holding that the death penalty is not per se violative of the Eighth Amendment); and Ex parte Taylor, 808 So.2d 1215 (Ala.2001), cert. denied, 534 U.S. 1086, 122 S.Ct. 824, 151 L.Ed.2d 705 (2002)(holding that Alabama’s capital-murder statute does not violate the Fourteenth Amendment). Contrary to Clark’s contention, the death penalty is not per se unconstitutional and, therefore, Clark’s argument is meritless.”
896 So.2d at 642-43.
Flowers also argues that the death penalty violates the Equal Protection Clause and the Due Process Clause of the Constitution. We note that this issue was never presented to the circuit court; therefore, we review this issue for plain error. See Rule 45A, Ala.R.App.P.
*959 “As this Court stated in Deardorff v. State, [Ms. CR-01-0794, June 25, 2004] — So.2d - (Ala.Crim.App.2004):
“‘“Our analysis begins with the basic principle that a defendant who alleges an equal protection violation has the burden of proving ‘the existence of purposeful discrimination.’ Whitus v. Georgia, 385 U.S. 545, 550 (1967). A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination ‘had a discriminatory effect’ on him. Wayte v. United States, 470 U.S. 598 (1985).”
‘“McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (footnote omitted).
“ ‘The same principle applies with regard to the examination of due-process claims. The United States Supreme Court stated what has become an oft-cited principle, “A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights.” County Court of Ulster County, N.Y. v. Allen, 442 U.S. 140, 154-55 (1979).
“ ‘The State correctly argues that Deardorff has made no attempt to allege or prove a discriminatory intent or a specific due-process violation. His “boilerplate” allegations regarding alleged inequities, such as his conclu-sory statement that “the entire death penalty structure in this state and in this country is unconstitutional on its face and should be abolished as such” ... do not establish that any of his rights to due process and equal protection were infringed.’
“ — So.2d at -. Knight has failed to show how his sentence of death violates his due-process and equal-protection rights. Knight has failed to meet his burden and is due no relief on this claim.”
Knight v. State, 907 So.2d 470, 481-82 (Ala.Crim.App.2004). Like the defendant in Knight, Flowers has made only a general claim and has failed to meet his burden in regard to the alleged constitutional violations.
X.
Flowers argues that his death sentence violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), because the jury did not make unanimous findings as to each aggravating circumstance that it found to exist.
The Alabama Supreme Court has rejected this claim. See Ex parte Wal-drop, 859 So.2d 1181 (Ala.2003). As the Supreme Court stated in Ex parte Martin, [Ms. 1022040, December Í0, 2004] — So.2d-(Ala.2004), when discussing its holding in Waldrop:
“In Ex parte Waldrop, 859 So.2d 1181 (Ala.2002), the defendant was sentenced to death for a murder committed during a robbery. Because the existence of one of the aggravating circumstances (that the murder was committed during a robbery) was determined by the jury, we concluded that Ring and Apprendi [v. New Jersey, 530 U.S. 466 (2000),] did not require us to reverse the sentence. ‘Only one aggravating circumstance must exist in order to impose a sentence of death. Ala.Code 1975, § 13A-5-45(f). Thus ... the jury, and not the trial judge, determined the existence of the “aggravating circumstance....’” Waldrop, 859 So.2d at 1188.”
— So.2d at -. Here, the jury convicted Flowers of murdering Philyaw during the course of a robbery and a kidnapping. Those two felony offenses elevated the crime to capital murder and were also aggravating circumstances that would support the imposition of the death sentence. *960 See § 13A-5-49(4), Ala.Code 1975. Flowers convictions do not violate Ring.
Flowers also argues that his death sentence violates Ring because the jury’s sentencing verdict recommending the death sentence was not unanimous. However, Ring does not require a unanimous jury verdict before a circuit court can sentence a defendant to death.
“We note that Ring requires only that the jury unanimously find the existence of an aggravating circumstance in order to make the defendant death-eligible. Alabama law does not require that the jury’s advisory verdict be unanimous before it can recommend death. See § 13A-5-46(f), Ala.Code 1975. Nothing in Ring supports Miller’s claim that the jury’s advisory verdict be unanimous.”
Miller v. State, 913 So.2d 1148, 1169 n. 4 (Ala.Crim.App.2004) (opinion on return to remand).[5]

Sentencing Order

XI.
Flowers argues that the circuit court’s order sentencing him to death is defective because the order states that Flowers was sentenced to die in Alabama’s electric chair.
The record shows that Flowers was sentenced in April 2002 when Alabama’s only method of execution was the electric chair. However, the Alabama Legislature enacted § 15-18-82.1, Ala.Code 1975, effective July 2002; that Code section provides: “A death sentence shall be executed by lethal injection, unless-the person sentenced to death affirmatively elects to be executed by electrocution.” This statute applies to every person on death row in Alabama no matter when his or her sentence of death was pronounced. Section 15-18-82.1(d) provides:
“The provisions of the opinion and all points of law decided by the United States Supreme Court in Malloy v. South Carolina, 237 U.S. 180 (1915), finding that the Ex Post Facto Clause of the United States Constitution is not violated by a legislatively enacted change in the method of execution for a sentence of death validly imposed for previously committed capital murders, are adopted by the Legislature as the law of this state.”
Section 15-18-82.1 applies to Flowers and renders this claim moot.
XII.
Last, as provided by § 13A-5-53(b), Ala. Code 1975, we review the propriety of Flowers’s conviction and his sentence of death. Flowers was convicted of murdering Tommy Philyaw during the course of a kidnapping and a robbery, offenses defined as capital by §§ 13A-5-40(a)(1) and 13A-5M0(a)(2), Ala.Code 1975. The jury, by a vote of 10 to 2, recommended that Flowers be sentenced to death.
The record shows that Flowers’s sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(l), Ala.Code 1975.
The circuit court found as aggravating circumstances that the murder was committed during the course of a kidnapping and during the course of a robbery, § 13A-5M9(4), and that the murder was *961 especially heinous, atrocious, or cruel as compared to other capital murders, § 13A-5-49(8). The circuit court found as statutory mitigating circumstances that Flowers had no significant history of prior criminal activity, § 13A-5-51(1), Ala.Code 1975, and that Flowers was 18 years old at the time of the murder, § 13A-5-51(7), Ala.Code 1975. According to § 13A-5-52, Ala. Code 1975, the circuit court found as nonstatutory mitigating circumstances that Flowers lacked a stable home life, that his mother died when he was 16 years of age, that he had little formal education, and that he abused drugs. The circuit court stated in its order that it gave these non-statutory mitigating circumstances very little weight. The circuit court then weighed the aggravating circumstances and the mitigating circumstances and sentenced Flowers to death.
According to § 13A-5-53(b)(2), Ala.Code 1975, this Court must also weigh the aggravating circumstances and the mitigating circumstances. After doing so, we agree with the circuit court’s findings.
Section 13A~5-53(b)(3), Ala.Code 1975, provides that we must address whether Flowers’s sentence to death was disproportionate or excessive to penalties imposed in similar cases. Flowers’s death sentence is neither. “ ‘In fact, two-thirds of the death sentences imposed in Alabama involve cases of robbery/murder.’ ” Smith v. State, 795 So.2d 788, 842 (Ala.Crim.App.2000), quoting McWhorter v. State, 781 So.2d 257, 330 (Ala.Crim.App.1999). See also Ziegler v. State, 886 So.2d 127 (Ala.Crim.App.2003) (death sentence for kidnapping/murder).
Last, we have searched this record for any error that may have adversely affected Flowers’s substantial rights and have found none. See Rule 45A, Ala.R.App.P.
Flowers’s capital-murder convictions and his sentence of death are due to be, and are hereby, affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB and SHAW, JJ., concur. BASCHAB, J., recuses herself.

. Welch is the mother of Flowers's codefen-dant, John Morrow; Owens is Welch’s daughter and Morrow's sister.

. John Morrow was convicted of capital murder and was sentenced to death for the murder of Philyaw. He appealed to this Court. We remanded the case for the circuit court to hold an evidentiary hearing on whether Morrow was mentally retarded. See Morrow v. State, [Ms. CR-01-1619, August 27, 2004] - So.2d - (Ala.Crim.App.2004). A return to remand has not yet been filed with this Court.
Fillingim pleaded guilty to murder and was sentenced to life imprisonment. Packer pleaded guilty to robbery in the first degree and was sentenced to 25 years' imprisonment. Angela Morrow pleaded guilty to robbery in the first degree and was sentenced to 25 years' imprisonment. We have no record that these codefendants appealed their convictions to this Court.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. We note that this standard has been replaced by the one adopted by the Legislature in 1988. Section 13A-3-l(a), Ala.Code 1975, now defines legal insanity as a person “unable to appreciate the nature and quality or wrongfulness of his acts.”

. Neither does the record contain any indication that Flowers's death sentence violates the United States Supreme Court’s holding in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Flowers's expert witness testified that he had performed a mental evaluation on Flowers and that the test disclosed that Flowers’s full-scale IQ was 84. There is no indication in the record that Flowers is mentally retarded as that term was defined in Ex parte Perkins, 851 So.2d 453 (Ala.2002).